**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TERRI COPREW, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KIND LLC,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Terri Coprew ("Plaintiff") brings this action on behalf of herself and all others similarly situated against KIND LLC ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of herself and all similarly situated consumers who purchased the KIND ZEROg Added Sugar Dark Chocolate Nuts & Sea Salt Bars marketed as containing zero added sugar (collectively, the "Products").[1]

[1] The Products are comprised of KIND ZEROg Added Sugar Dark Chocolate Nuts & Sea Salt Bars, KIND Zero Added Sugar Caramel Almond & Sea Salt Bars, KIND Zero Added Sugar Raspberry Vanilla Cashew Bars, and KIND Zero Added Sugar Peanut Butter Dark Chocolate Bars. *See* KIND, Dark Chocolate Nuts and Sea Salt, https://www.kindsnacks.com/products/zerog-added-sugar-bar/dark-chocolate-nuts-and-sea-salt (last visited Aug. 28, 2026). Discovery may reveal that additional of Defendant's Products are within the scope of Plaintiff's Complaint. Accordingly, Plaintiff reserves the right to amend her Complaint to add additional of Defendant's Products.

2. Defendant repeatedly markets and advertises the Products as containing "ZEROg ADDED SUGAR" (the "Zero Sugar Representations"). However, unbeknownst to reasonable consumers, Defendant adds sugar to the Products in the form of allulose. Allulose is a monosaccharide and therefore a sugar under the applicable federal and California labeling standards. It is not present in trace amounts: each bar contains approximately 5 grams of allulose.

3. The Products repeatedly represent that they contain "ZEROg ADDED SUGAR" on their front panels. Those categorical outside-panel statements expressly represent that no sugar was added to the Products and are nutrient-content claims under 21 C.F.R. § 101.13(b) and (b)(1). "ZEROg ADDED SUGAR" is a reasonable variation or synonym of the terms "no added sugar," "without added sugar," and "no sugar added," and therefore must comply with § 101.60(c)(2). 21 C.F.R. § 101.13(b)(4). Section 101.60(c)(2)(i) permits such a claim only if no amount of sugars, as defined in § 101.9(c)(6)(ii), or any other ingredient containing sugars that functionally substitutes for added sugars, is added during processing or packaging. Defendant nevertheless adds approximately 5 grams of allulose. The governing federal standards are 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and 101.60(a)(1)–(3), (c)(2).

4. Accordingly, Plaintiff brings claims against Defendant for violations of: (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; (3) California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*.; and (4) unjust enrichment.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because the proposed Classes include more than 100 members, the aggregate claims

of the proposed Classes exceed $5,000,000, exclusive of interest and costs, and at least one member of the proposed Classes is a citizen of a state different from Defendant.

6. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in New York, New York, within this District, and is therefore at home in this State.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (c)(2) because Defendant resides in this District.

**PARTIES**

8. Plaintiff Terri Coprew is a citizen of California residing in Santa Ana, California. Plaintiff purchased KIND ZEROg Added Sugar Dark Chocolate Nuts & Sea Salt Bars for her personal use from a Target store located in Costa Mesa, California, on August 27, 2026, for approximately $6.79. Before making her purchase, Plaintiff saw and relied on Defendant's prominent representation that the Product contained "ZEROg ADDED SUGAR." Based on that representation, Plaintiff reasonably believed that no sugar had been added to the Product. The representation was part of the basis of Plaintiff's bargain, and she would not have purchased the Product on the same terms had she known it was untrue. Plaintiff also paid a price premium because of Defendant's false and misleading zero-added-sugar claim but did not receive the benefit of her bargain because the Product contains 5 grams of allulose. Had Plaintiff known the truth, she would not have purchased the Product or would have paid substantially less for it.

9. Plaintiff remains interested in purchasing nut bars that truly contain no added sugar. However, she cannot know for certain whether Defendant's false labeling and marketing have been or will be corrected, and the Products' composition may change over time. If Defendant continues to make the Zero Sugar Representations, Plaintiff will be unable to make informed purchasing decisions and is likely to be misled again unless Defendant is required to ensure that

the Products' marketing is accurate. Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, or formulation of food products. Neither Plaintiff nor reasonable consumers have the specialized knowledge needed to determine independently whether allulose is a sugar.

10. Defendant KIND LLC maintains its principal place of business at 1372 Broadway, New York, New York 10018. Defendant formulates, labels, markets, distributes, and/or sells the Products throughout California and the United States, including in this District.

## FACTUAL ALLEGATIONS

### A. Consumers Seek Out and Pay More for Products That Contain No Sugar

11. Consumer demand for products without sugar is well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugar.[2]

12. That demand accords with widespread public-health guidance. The 2025–2030 Dietary Guidelines for Americans state that no amount of added sugars is recommended or considered part of a healthy or nutritious diet and that one meal should contain no more than 10 grams of added sugars.[3] The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake and states that limiting them further to 5 percent or less

---

[2] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May-2022.pdf.

[3] U.S. Department of Health and Human Services & U.S. Department of Agriculture, Dietary Guidelines for Americans, 2025–2030, at 4 (Jan. 2026), https://cdn.realfood.gov/DGA.pdf

may provide additional health benefits.[4] The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[5]

13. Food and beverage manufacturers are aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "no added sugar," "zero added sugar," and "0g added sugar" command higher prices than comparable products that do not bear those claims, and manufacturers reserve the front principal display panel of their packaging for the claims they believe will most motivate a purchase.

14. Defendant has capitalized on that demand. It sells the Products containing allulose—an added monosaccharide sugar—while representing them as containing "ZEROg ADDED SUGAR." Defendant thereby obtained an unfair competitive advantage over competitors that accurately label comparable nut bars.

**B. Defendant's Zero Sugar Representations**

15. Defendant prominently represents on the front and back panels of the Products' packaging that they contain "ZEROg ADDED SUGAR." These statements are referred to herein as the "Zero Sugar Representations." Below are the Products and the Zero Sugar Representations:

---

[4] World Health Organization, Healthy Diet (Jan. 26, 2026), https://www.who.int/news-room/fact-sheets/detail/healthy-diet

[5] American Heart Association, Added Sugars, https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars (last visited Aug. 28, 2026).


KIND®
ZEROG ADDED SUGAR
Dark Chocolate Nuts & Sea Salt
1g TOTAL SUGAR | NO ARTIFICIAL SWEETENERS
NOT A LOW CALORIE FOOD.
SEE NUTRITION INFORMATION
FOR CALORIE AND FAT CONTENT.
WITH ALMONDS & PEANUTS
5-1.2 OZ (35g) BARS
NET WT. 6.2 OZ (175g)


KIND®
ZEROG ADDED SUGAR
Peanut Butter Dark Chocolate
1g TOTAL SUGAR | NO ARTIFICIAL SWEETENERS
NOT A LOW CALORIE FOOD.
SEE NUTRITION INFORMATION
FOR CALORIE AND FAT CONTENT.
WITH PEANUTS & ALMONDS
5-1.2 OZ (35g) BARS
NET WT. 6.2 OZ (175g)


KIND®
ZEROG ADDED SUGAR
Raspberry Vanilla Cashew
With other natural flavors
2g TOTAL SUGAR | NO ARTIFICIAL SWEETENERS
NOT A LOW CALORIE FOOD.
SEE NUTRITION INFORMATION
FOR CALORIE CONTENT.
WITH ALMONDS
5-1.2 OZ (35g) BARS
NET WT. 6.2 OZ (175g)


KIND®
ZEROG ADDED SUGAR
Caramel Almond & Sea Salt
Flavored
1g TOTAL SUGAR | NO ARTIFICIAL SWEETENERS
NOT A LOW CALORIE FOOD.
SEE NUTRITION INFORMATION
FOR CALORIE AND FAT CONTENT.
5-1.2 OZ (35g) BARS
NET WT. 6.2 OZ (175g)

16. The Zero Sugar Representations communicate to reasonable consumers that no sugar was added to the Products. That is the plain and ordinary meaning of "ZEROg ADDED SUGAR."

17. However, these representations are false. As shown on grocery store Publix's website, the Kind Bar Dark Chocolate Nuts & Sea Salt contains five grams of allulose:




**C. Allulose Is a Sugar**

18. Allulose is a sugar.

19. Chemically, allulose is a monosaccharide. It is the C-3 epimer of D-fructose, meaning that allulose and fructose have the same molecular formula and connectivity but differ in the spatial orientation of a hydroxyl group at the third carbon. "D-allulose, a C-3 epimer of D-

fructose, is a rare monosaccharide used as a food ingredient or a sweetener."[6] Allulose is accordingly "a rare sugar," and "a monosaccharide that is low in calories and that maintains approximately 70% of sweetness relative to sugar."[7]

20. Allulose is not merely a sugar as a matter of chemical classification. It is used as one. Allulose has "70% of the sweetness of sucrose, which means it is viewed as a potential alternative sweetener."[8] The food science literature describes allulose and other rare sugars as "monosaccharides with sweetness similar to those as caloric sugars, but [with] low caloric values," which "are now widely used as sugar substitutes."[9]

21. Because allulose is less sweet than table sugar, it is used in gram-scale quantities as a bulk sweetener. High-intensity sweeteners such as saccharin, aspartame, acesulfame potassium, neotame, sucralose, and advantame are approximately 200 to 20,000 times as sweet as sucrose.[10] By contrast, allulose has approximately 70% of sucrose's sweetness and, as Defendant's own product information shows, is used in large quantities as a bulk sweetener.[11]

22. Allulose also behaves like sugar in food. "It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility,

---

[6] Han-Joo Maeng *et al.*, *Metabolic Stability of D-Allulose in Biorelevant Media and Hepatocytes: Comparison with Fructose and Erythritol*, 8 FOODS ART. 448, at 1 (2019), https://doi.org/10.3390/foods8100448.

[7] Youngji Han *et al.*, *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*, 10 NUTRIENTS ART. 2010, at 1–2 (2018), https://doi.org/10.3390/nu10122010.

[8] Maeng *et al.*, supra note 6, at 2.

[9] *Id*.

[10] U.S. FOOD & DRUG ADMINISTRATION, *Aspartame and Other Sweeteners in Food*, https://www.fda.gov/food/food-additives-petitions/aspartame-and-other-sweeteners-food (last visited August 28, 2026).

[11] Mengting Tao, Wenli Zhang & Wanmeng Mu, *D-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry*, 73 J. AGRIC. & FOOD CHEM. 27,833, 27,833–35 (2025) (Viewpoint), https://doi.org/10.1021/acs.jafc.5c13620.

water activity, and viscosity."[12] It is used as "a partial replacement of added sugars."[13] Allulose is "widely regarded as a promising substitute for sucrose"—that is, a substitute for table sugar, and one that is itself a sugar.[14]

23. Each bar contains approximately 5 grams of allulose.

24. The Food and Drug Administration ("FDA") identifies allulose as a sugar. In its 2016 Nutrition Facts rulemaking, the FDA stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration pending any future rulemaking that would otherwise exclude the substance.[15] The current regulation continues to define Total Sugars as "the sum of all free mono- and disaccharides" and does not exclude allulose. 21 C.F.R. § 101.9(c)(6)(ii).

25. The Calorie Control Council likewise describes allulose under the heading "Allulose is a Naturally Occurring Sweetener" and states that "[a] monosaccharide, or simple sugar, allulose is absorbed by the body, but not metabolized, so it is nearly calorie-free."[16]

**D. The Products Violate the FDA Nutrient Content Regulations**

26. Congress empowered FDA to oversee and regulate food labeling by enacting the Federal Food, Drug, and Cosmetic Act, as amended by the Nutrition Labeling and Education Act, 21 U.S.C. § 301 et seq. The FDA promulgated the relevant food-labeling regulations in 21 C.F.R. part 101.

---

[12] *Han et al.*, supra note 7, at 10.

[13] *Id.*

[14] Wenli Zhang *et al.*, D-Allulose, *a Versatile Rare Sugar: Recent Biotechnological Advances and Challenges*, 63 CRITICAL REVS. FOOD SCI. & NUTRITION 5661, 5661 (2023) (published online Dec. 29, 2021), https://doi.org/10.1080/10408398.2021.2023091.

[15] FOOD LABELING: *Revision of the Nutrition and Supplement Facts Labels*, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016).

[16] Calorie Control Council, *Allulose*, https://caloriecontrol.org/ingredients/sweeteners/allulose/ (last visited August 28, 2026).

27. FDA regulations distinguish information appearing within the Nutrition Facts panel from statements appearing elsewhere on a label. Information within the Nutrition Facts panel is not itself a nutrient-content claim, but the same information placed outside that panel is subject to the nutrient-content-claim regulations. 21 C.F.R. § 101.13(c). The challenged Zero Sugar Representations are nutrient-content claims because they appear outside the Nutrition Facts panel and expressly represent that no sugar was added to the Products. 21 C.F.R. § 101.13(b)(1), (c).

28. The categorical Zero Sugar Representations are direct statements that no sugar was added to the Products and thus are expressed nutrient-content claims. 21 C.F.R. § 101.13(b)(1), (c). Because Defendant adds allulose during processing, the representations must satisfy § 101.60(c)(2). The governing federal standards are 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and 101.60(a)(1)–(3), (c)(2).

29. The Zero Sugar Representations also violate § 101.13(b)(4), which permits reasonable variations and synonyms of defined nutrient-content terms only if they are not misleading. "ZEROg ADDED SUGAR" is a reasonable variation or synonym of the terms "no added sugar," "without added sugar," and "no sugar added" governed by § 101.60(c)(2). That regulation permits those terms only if each of the following conditions is met:

> (i) No amount of sugars, as defined in § 101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging;
>
> (ii) The product does not contain an ingredient containing added sugars, such as jam, jelly, or concentrated fruit juice;
>
> (iii) The sugars content has not been increased above the amount present in the ingredients by some means, except where the intended functional effect of the process is not to increase the sugars content and the increase is functionally insignificant;
>
> (iv) The food that the product resembles and for which it substitutes normally contains added sugars; and

(v) Unless the product qualifies as low or reduced calorie, the product bears a statement that it is not "low calorie" or "calorie reduced" and directs consumers to the nutrition panel for sugar and calorie information.

21 C.F.R. § 101.60(c)(2)(i)–(v).

30. These requirements are conjunctive; each one must be satisfied.

31. The Products do not comply with these regulations. Subsection (i) cross-references 21 C.F.R. § 101.9(c)(6)(ii), which provides that "[t]otal sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." Allulose, as a monosaccharide epimer of fructose, falls squarely within that definition. As such, because Defendant adds approximately 5 grams of allulose to each bar, the Zero Sugar Representations do not comply with § 101.60(c)(2)(i).

32. FDA's nonbinding allulose guidance does not authorize the challenged categorical added-sugar claims. The guidance announces enforcement discretion, pending rulemaking, for excluding allulose from the gram amounts of Total Sugars and Added Sugars declared on Nutrition and Supplement Facts labels. It does not amend § 101.9(c)(6)(ii), address § 101.60(c)(2), or purport to authorize a separate outside-panel "ZEROg ADDED SUGAR" claim.[17]

33. Because Defendant adds approximately 5 grams of allulose to each bar during processing while the Products bear false, misleading, and impermissible outside-panel nutrient-content claims, the Products are misbranded under federal law. 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and 101.60(a)(1)–(3), (c)(2). Plaintiff does not seek to enforce the FDCA directly. She seeks relief under independently enforceable state consumer-protection and warranty laws, including California's Sherman Law

[17] U.S. Food & Drug Administration, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* 1, 8–9 (Oct. 2020), https://www.fda.gov/media/123342/download.

provisions adopting requirements identical to federal food-labeling requirements, and independently alleges that the Zero Sugar Representations mislead reasonable consumers.

### E. Defendant's Conduct Violates California's Food Labeling Laws

34. Defendant's marketing, advertising, distribution, and sale of the Products violate the misbranding provisions of California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 *et seq*. (the "Sherman Law"), which adopts federal food-labeling regulations as California regulations. Cal. Health & Safety Code § 110100(a).

35. Defendant's marketing, advertising, distribution, and sale of the Products violate the Sherman Law's misbranding provisions, including:

(a) Section 110660 (a food is misbranded if its labeling is false or misleading in any particular);

(b) Section 110670 (a food is misbranded if its labeling does not conform with the requirements for nutrient-content or health claims set forth in 21 U.S.C. § 343(r));

(c) Section 110760 (making it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded);

(d) Section 110765 (making it unlawful for any person to misbrand any food); and

(e) Section 110770 (making it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food).

36. Defendant's marketing, advertising, distribution, and sale of the Products also violate the Sherman Law's false-advertising provisions, including:

(a) Section 109885, which defines "advertisement" to include representations on products and their packages, and Section 110390, which prohibits dissemination of food advertisements that are false or misleading in any particular;

(b) Section 110395 (making it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food);

(c) Sections 110398 and 110400 (making it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised).

37. Because the Products bear "ZEROg ADDED SUGAR" nutrient-content claims despite Defendant's addition of approximately 5 grams of allulose to each bar during processing, the Products are misbranded and falsely advertised under California law, and Defendant's labeling, distribution, and sale of the Products are unlawful. The parallel federal standards are 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and 101.60(a)(1)–(3), (c)(2).

**F. Reasonable Consumers Cannot Detect Defendant's Deception**

38. Reasonable consumers have no reason to search the back panel when presented with the conspicuous front-panel representation that the Products contain "ZEROg ADDED SUGAR." Consumers are not expected to look beyond a misleading representation on the front of a package to discover that the representation is false. But even if they did, the Nutrition Facts panel declares 1 gram of Total Sugars and 0 grams of Added Sugars. The ingredient statement identifies allulose but does not state that allulose is a free monosaccharide or sugar. And as stated elsewhere, Defendant adds 5 grams of allulose to the Products.

39. Consumers are also not required to conduct independent scientific testing or research into the chemical classification of listed ingredients to verify express label claims. Reasonable consumers do not possess specialized knowledge of carbohydrate chemistry. Defendant is responsible for ensuring that its express labeling and marketing claims are truthful and not misleading.

**G. Defendant Knew the Zero Sugar Representations Were False**

40. Defendant knew, or should have known, that the Zero Sugar Representations were false or misleading when it formulated, labeled, distributed, and sold the Products. Specifically, Defendant knew that: (a) the Products contain allulose; (b) allulose is a free monosaccharide and sugar; (c) Defendant adds approximately 5 grams of allulose to each bar during processing; (d) the

packaging nevertheless represents on both the front and back panels that the Products contain "ZEROg ADDED SUGAR"; (e) reasonable consumers would rely on the Zero Sugar Representations when purchasing; (f) consumers would not receive the represented benefit of the bargain; and (g) the Zero Sugar Representations enabled Defendant to charge a premium.

41. Defendant formulates the Products and controls the ingredient statement, Nutrition Facts panel, and packaging. Defendant lists allulose as the third ingredient and prints the Zero Sugar Representations prominently on both the front and back panels. Those facts demonstrate that Defendant knew the Products contained added allulose while making the challenged representations.

42. Defendant could have stopped using the Zero Sugar Representations, accurately qualified them, or ensured that they were true, but chose not to.

**H. Defendant's Zero Sugar Representations Injured Plaintiff and the Classes**

43. Defendant concealed or failed to disclose material facts about the Products, including: (a) that allulose is a free monosaccharide and sugar; (b) that Defendant adds it during processing; (c) that the Products do not comply with pertinent FDA regulations; (d) that the Products do not conform to the Zero Sugar Representations; and (e) that the Products are misbranded under federal and California law as a result of the Zero Sugar Representations.

44. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and Class Members in that they: (a) paid money for products that were not as represented; (b) paid a premium for the Products; (c) were deprived of the benefit of their bargains; and (d) purchased misbranded Products that could not lawfully have been sold because they violate FDA requirements and, for California Subclass Members, California's Sherman Law.

45. Accordingly, Plaintiff and Class Members suffered injury in fact and lost money or property because of Defendant's wrongful conduct.

**I. Plaintiff Lacks an Adequate Remedy at Law**

46. Plaintiff lacks an adequate remedy at law for the future harm described above. Damages cannot remedy her inability to rely on Defendant's Zero Sugar Representations when deciding whether to purchase the Products in the future. Only injunctive relief requiring Defendant to cease or correct the misleading Zero Sugar Representations can address that prospective harm.

47. Equitable relief is also necessary because legal remedies may prove inadequate to provide complete relief, including restitution measured by the difference between the prices Plaintiff and Class Members paid and the value of the Products as received, which may not be coextensive with damages.

48. Equitable relief is additionally appropriate because the statutes of limitations for the asserted causes of action vary. The UCL carries a four-year limitations period, which may reach purchases not fully remediable under other causes of action.

49. The scope of actionable misconduct under the FAL and UCL is also broader than under the other causes of action asserted here. The FAL and UCL prohibit Defendant's fraudulent package-labeling scheme. Plaintiff's warranty and common-law claims are more limited, focusing on duties arising from Defendant's Zero Sugar Representations at the point of purchase. The UCL may also borrow statutory prohibitions that do not themselves create a private cause of action.

## CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action on behalf of herself and all others similarly situated under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3). The proposed classes are defined below (collectively, the "Classes"):

**Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

**California Subclass:** All persons in California who, during the maximum period of time permitted by law, purchased Defendant's Products for their personal use.

51. The Classes do not include: (1) Defendant or its officers or directors; (2) the Judge or Magistrate Judge assigned to this action; (3) the assigned Judge's or Magistrate Judge's staff and family; or (4) Plaintiff's counsel or Defendant's counsel.

52. Plaintiff reserves the right to amend the class definitions and add classes or subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

53. **Community of Interest:** There is a well-defined community of interest among members of the Classes, and the disposition of their claims in a single action will provide substantial benefits to all parties and to the Court.

54. **Numerosity:** While the exact number of Class Members is unknown to Plaintiff and can be determined only through discovery, upon information and belief, they number at least in the thousands, and joinder is impracticable. Class Members may be notified through Defendant's and third-party retailers' distribution and sales records and by publication.

55. **Existence and Predominance of Common Questions of Law and Fact:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual members. These common legal and factual questions include, but are not limited to:

(a) Whether allulose is a free monosaccharide and sugar;

(b) Whether the Products contain added allulose and fail the governing conditions for the Zero Sugar Representations, including 21 U.S.C. § 343(a)(1), (r)(1)(A); 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and 101.60(a)(1)–(3), (c)(2);

(c) Whether reasonable consumers would understand Defendant's representations concerning the Products to be untrue or misleading;

(d) Whether Defendant's representations were material;

(e) Whether the Products are misbranded under federal law and, with respect to the California Subclass, California law;

(f) Whether Defendant was unjustly enriched as a result of the unlawful conduct alleged in this Complaint;

(g) Whether Plaintiff and Class Members suffered damages as a result of Defendant's actions and the amount of those damages;

(h) Whether Plaintiff and Class Members are entitled to statutory damages; and

(i) Whether Plaintiff and Class Members are entitled to attorneys' fees and costs.

56. With respect to the California Subclass, additional questions of law and fact common to the members include whether Defendant violated California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

57. **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff was exposed to Defendant's Zero Sugar Representations, purchased a Product in reliance on them, and suffered the same type of economic loss.

58. **Adequacy:** Plaintiff will fairly and adequately represent and protect the Classes' interests as required by Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests adverse to the Classes, is committed to vigorous prosecution, and has retained skilled and experienced counsel.

59. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the asserted claims under Federal Rule of Civil Procedure 23(b)(3) because the expense and burden of individual litigation make it economically infeasible for Class Members to seek redress outside a class action. Even if Class Members could afford individual litigation, the burden on the courts would be substantial. Individualized litigation would risk varying or contradictory judgments and magnify delay and expense through repeated trials of the same factual issues. By contrast, maintaining this action as a class action with respect to some or

all issues presents fewer management difficulties, conserves party and judicial resources, and protects each Class Member's rights. Plaintiff anticipates no difficulty managing this action as a class action. Classwide relief is essential to compel compliance with applicable consumer-protection laws, and separate actions could subject Defendant to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

60. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

61. Plaintiff brings this claim on behalf of herself and the California Subclass against Defendant.

62. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have."

63. Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

64. Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

65. Defendant profited from sales of the falsely and deceptively advertised Products by representing that they contain "ZEROg ADDED SUGAR," even though Defendant adds approximately 5 grams of allulose to each bar during processing.

66. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

67. Pursuant to Cal. Civ. Code §§ 1780(a)(1)-(5), Plaintiff and California Subclass Members seek injunctive relief under the CLRA. Plaintiff does not seek CLRA damages in this action.

**<u>COUNT II</u>**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 et seq.**
**(On Behalf of Plaintiff and the California Subclass)**

68. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

69. Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

70. Defendant violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210, by engaging in unlawful, unfair, and fraudulent business practices.

71. The UCL defines unfair competition to "mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200. A business act or practice is unlawful if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows a person who has suffered injury in fact and lost money or property to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204.

72. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code § 17200 *et seq.*

73. Defendant violated the UCL's proscription against unlawful business practices through its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*; the CLRA, Cal. Civ. Code § 1750 *et seq.*; and the Sherman Law, including Cal. Health & Safety Code §§ 110100, 110390, 110395, 110398, 110400, 110660, 110670, 110760, 110765, and 110770. Through the Sherman Law's adoption of federal food-labeling requirements, Defendant also violated the parallel standards in 21 U.S.C. § 343(a)(1), (r)(1)(A), and 21 C.F.R. §§ 101.9(c)(6)(ii), 101.13(b), (b)(1), (b)(4), and (c), and 101.60(a)(1)–(3), (c)(2).

74. Defendant also violated the UCL's proscription against unfair business practices. Defendant's acts, omissions, misrepresentations, practices, and nondisclosures are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous. The gravity of Defendant's conduct outweighs any asserted benefit. There is no utility in representing that nut bars made with approximately 5 grams of added allulose per bar contain zero grams of added sugar. Defendant's false and misleading representations also disadvantage competitors that either do not make similar claims or formulate their products to conform to them.

75. Plaintiff and California Subclass Members suffered substantial injury by buying Products they would not have purchased absent Defendant's unlawful, fraudulent, and unfair labeling, packaging, and omissions concerning added allulose.

76. The gravity of Defendant's conduct outweighs any justification, particularly considering lawful alternatives. Defendant could have removed the Zero Sugar Representations, accurately qualified them, or reformulated the Products. Its conduct offends established public policy and substantially injures Plaintiff and California Subclass Members.

77. Plaintiff and California Subclass Members could not reasonably have avoided their injury or known that the prominent labeling was inaccurate. Consumers lack specialized

knowledge to identify allulose as a free monosaccharide and are not required to reconcile the front-panel promise with the back-panel ingredient and Nutrition Facts information.

78. Under California Business & Professions Code § 17203, Plaintiff and California Subclass Members seek restitution, injunctive relief, and all other relief the Court deems proper.

**COUNT III**
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass)**

79. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

80. Plaintiff brings this claim on behalf of herself and the California Subclass against Defendant.

81. Defendant's acts and practices have deceived or are likely to deceive California Subclass Members and the public. Defendant represents that the Products contain "ZEROg ADDED SUGAR," even though Defendant adds approximately 5 grams of allulose.

82. Defendant has disseminated uniform package advertising regarding the Products throughout California. The advertising was unfair, deceptive, untrue, or misleading within the meaning of Cal. Bus. & Prof. Code § 17500 and was intended and likely to deceive consumers.

83. In making and disseminating these statements, Defendant knew, or should have known, its advertising was untrue or misleading. Plaintiff and California Subclass Members based their purchasing decisions on the materially false Zero Sugar Representations and were injured in fact and lost money or property as a result.

84. Defendant's misrepresentations concerning the material facts described above constitute false and misleading advertising and therefore violate Cal. Bus. & Prof. Code § 17500 *et seq*.

85. Plaintiff and California Subclass Members seek restitution, injunctive relief, attorneys' fees as authorized by applicable law, and all other relief the Court deems proper.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class)**

86. Plaintiff incorporates by reference and re-alleges the allegations contained in all preceding paragraphs of this Complaint.

87. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant under California law.

88. To the extent required, Plaintiff asserts this cause of action in the alternative to her legal claims, as permitted by Federal Rule of Civil Procedure 8.

89. Defendant's false and misleading Zero Sugar Representations caused Plaintiff and Class Members to pay a price premium for the Products.

90. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

91. Defendant thereby received a direct and unjust benefit at the expense of Plaintiff and Class Members.

92. Plaintiff and Class Members seek the return of that unjust benefit.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23, naming Plaintiff as representative of the Classes, and appointing Plaintiff's Counsel as Class Counsel;

b) For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c) For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d) For damages available under the asserted causes of action, excluding CLRA damages unless and until properly added after satisfaction of Cal. Civ. Code § 1782;

e) For prejudgment interest on all amounts awarded;

f) For restitution to the extent permitted by applicable law;

g) For injunctive relief as pleaded or as the Court may deem proper, including an order requiring Defendant to cease labeling and selling the Products with the Zero Sugar Representations and to make affirmative disclosures sufficient to dispel the public misperception created by Defendant's conduct;

h) For an order awarding Plaintiff's and the Classes' reasonable attorneys' fees, expenses, and costs of suit; and

i) For such other and further relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: August 28, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Caroline C. Donovan*
Caroline C. Donovan

Caroline C. Donovan
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: cdonovan@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (*pro hac vice forthcoming*)
Joshua B. Glatt (*pro hac vice forthcoming*)

1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
jglatt@bursor.com

**GUCOVSCHI LAW FIRM, PLLC**
Adrian Gucovschi
Nathaniel Haim Sari
140 Broadway, 46th Floor
New York, NY 10005
Telephone: (212) 884-4230
Email: adrian@gucovschilaw.com
nathaniel@gucovschilaw.com

*Counsel for Plaintiff and the Classes*